```
---------------------------------------x
CONPROCA, S.A. DE C.V.,                :
                Petitioner,            :
                                       :    11 Civ. _____
        - against -                    :
                                       :    PETITION TO CONFIRM
PETRÓLEOS MEXICANOS AND                :    ARBITRATION AWARD
PEMEX-REFINACIÓN,                      :
                                       :
                Respondents.           :
---------------------------------------x
```

Petitioner CONPROCA S.A. de C.V., by its attorneys, White & Case LLP, alleges as follows in support of its Petition to Confirm Arbitration Award pursuant to 9 U.S.C. §§ 207, 302, 304 and 305:

## THE PARTIES

1. Petitioner CONPROCA S.A. de C.V. ("CONPROCA") is a corporation organized under the laws of Mexico, is qualified to do business in that country and maintains its principal offices and facilities in Mexico City, Mexico. The mailing address for CONPROCA is Paseo de la Reforma No. 404, Piso 3, Colonia Juárez, Delegación Cuauhtémoc, 06600 México, D.F., México. CONPROCA is owned 85% by SK Engineering & Construction Co. Ltd. and 15% by Siemens AG.

2. Upon information and belief, Respondent Petróleos Mexicanos ("PEMEX") is a corporation organized under the laws of Mexico. Respondent PEMEX is a decentralized public entity of the Federal Government of Mexico.[1] Upon information and belief, the mailing address

---

[1] See Petróleos Mexicanos, PEMEX's 2010 Annual Report, Form 20-F, p. 1, available at: http://www.ri.pemex.com/index.cfm?action=statusfilecat&categoryfileid=8942.

for PEMEX is Av. Marina Nacional 329, Edificio A, Piso 8, Col. Huasteca, 11311 México, D.F., México and/or Dirección Corporativa de Finanzas, Subdirección de Financiamientos y Tesorería, Torre Ejecutiva, Piso 32, Av. Marina Nacional 329, Col. Huasteca, 11311 México, D.F., México. Respondent Pemex-Refinación ("PR," collectively with PEMEX, the "Respondents") is a wholly-owned subsidiary of PEMEX.[2] Upon information and belief, PR is organized under the laws of México. Upon information and belief, the mailing address for PR is Av. Marina Nacional 329, Edificio A, Piso 8, Col. Huasteca, 11311 México, D.F., México and/or Subdirección de Proyectos, Torre Ejecutiva, Piso 4, Av. Marina Nacional 329, Col. Huasteca, 11311 México, D.F., México.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1330(a) and 9 U.S.C. §§ 203 and 302.

4. This Court has jurisdiction over Respondents PEMEX and PR pursuant to 28 U.S.C. §§ 1330(b), 1603, and 1605(a)(6).

5. Venue is proper pursuant to 9 U.S.C. §§ 204, 302 and 28 U.S.C. §§ 1391(c), (d) and (f).

## BACKGROUND

6. On November 26, 1997, CONPROCA, PEMEX and PR (collectively the "Parties") executed a Financed Public Works Contract (the "COPF") and a Unit Price Public Works Contract (the "COPPU") pursuant to which, among other things, CONPROCA was engaged to conduct engineering, procurement and construction work to modernize and expand the Ing.

---

[2] Id., pp. 1, 12-13.

Héctor R. Lara Sosa Refinery, located in the Municipality of Cadereyta de Jiménez, Nuevo León, Mexico and associated pipelines and terminals (the "Project"). (Copies and certified English translations of the COPF (without attachments) and the COPPU are attached to the Declaration of David Hille in Support of Petition to Confirm Arbitration Award ("Hille Decl.") as Exs. 1 and 2.)

7. The Project involved works across over 800 miles of territory, including, *inter alia*, the engineering, procurement, construction and start up of 29 processing units consisting of 10 new plant units, the modernization, expansion or revamping of 11 plant units, the expansion of tanks and utilities at 4 units and the construction of long distance pipelines and terminals comprising 4 units.

8. Pursuant to the COPF, CONPROCA agreed to perform the scope of work defined therein. The Parties further agreed that, for any work that might be requested or found necessary that was not within the defined scope of the COPF, CONPROCA would receive additional compensation pursuant to the terms of the COPPU, attached as Annex 26 to the COPF.

9. The COPF and the COPPU each contain virtually identical arbitration clauses. Clause 37.2 of the COPF provides:

> The parties agree that the disputes or petitions arising in connection with this Contract, other than technical disputes which must be resolved pursuant to Clause 23 hereof, must exclusively be resolved by arbitration in accordance with the Conciliation and Arbitration Regulation of the International Chamber of Commerce valid at the time. The governing law on the merits will be that stipulated in Clause 19.1 hereof. The arbitration place will be Mexico City, D.F., and the arbitration board will have three members, appointed in accordance with said Regulation. Arbitration will be conducted in Spanish. The arbitration award will be final and binding for the Parties. The parties expressly waive the right of any other jurisdiction to which they may be entitled due to their domiciles, nationality or any other reason. (Ex. 1 at 72)

Clause 19.2 of the COPPU provides:

> The parties agree that the disputes or petitions arising in connection with this Contract, other than technical disputes, which must be resolved pursuant to Clause 13 hereof, must exclusively be resolved by arbitration in accordance with the Conciliation and Arbitration Regulations of the International Chamber of Commerce in force at the time. The governing law on the substance will be that stipulated in Clause 19.1 hereof. The place of arbitration will be Mexico City, D.F., and the arbitration board will have three members, appointed in accordance with said Regulations. The arbitration will be conducted in Spanish. The arbitration award will be final and binding for the Parties. The parties expressly waive the right to any other jurisdiction to which they may be entitled due to their domiciles, nationality or any other reason. (Ex. 2 at 29)

10. Disputes arose in connection with the Project. Pursuant to the arbitration clauses, CONPROCA commenced arbitration by filing a claim with the International Chamber of Commerce (the "ICC") on September 14, 2001 (the "Arbitration"). The ICC accepted the claim and captioned the Arbitration <u>CONPROCA S.A. de C.V.</u> v. <u>Petróleos Mexicanos and Pemex-Refinación</u>, Case No. 11760/KGA, subsequently re-captioned as Case No. 11760/KGA/CCO/JRF/CA.

11. On October 25, 2001, the ICC confirmed the appointment of Mr. Bernardo Cremades Sanz-Pastor as CONPROCA's party appointed arbitrator and the appointment of Mr. Alejandro Ogarrio Ramírez as Respondents' party appointed arbitrator. On December 17, 2001, the ICC appointed Dr. Juan Pablo Cárdenas to serve as Chair of the three-member panel (the "Tribunal"). (Copies and certified English translations of the ICC's October 25 and December 17, 2001 letters of appointment are attached to the Hille Decl. as Ex. 3.)[3]

---

[3] Pursuant to 9 U.S.C. § 13, the arbitrator appointment documents, the arbitration agreement, each written extension of time within which to make the awards, and the awards are submitted with this Petition on behalf of CONPROCA.

12. The Parties asserted numerous claims and counterclaims in the Arbitration. In particular, CONPROCA asserted (a) claims for payment of works beyond the scope of the COPF, (b) claims for delay and disruption caused by Respondents, (c) claims for value-added works beyond the scope of the COPF, (d) a claim for deficient engineering, (e) a claim for additional civil and mechanical works outside the scope of the COPF, (f) claims for unlawful enforcement of securities, and (g) a claim for financial costs. CONPROCA further claimed the amounts of interest, arbitration costs and taxes payable on the sums awarded pursuant to the referenced claims. For their part, Respondents submitted counterclaims alleging, *inter alia*, that CONPROCA's works were incomplete and/or defective, and disputing that the works underlying CONPROCA's claims had been outside the scope of COPF.

13. During the entirety of the Arbitration, the Parties were represented by outside counsel. CONPROCA was represented by, or received advice from, a total of nine international and local firms, co-led by White & Case LLP and Santamarina y Steta, S.C. At various times, Respondents were represented by Jauregui, Navarrete, Nader y Rojas, S.C., Thacher Proffitt & Wood, and Chadbourne & Parke.

14. By Procedural Order No. 4, dated May 11, 2004, the Tribunal decided to determine liability issues in a first phase (the "Liability Phase") and, following a decision on these issues, would turn to the quantification of damages in a second, and final, phase (the "Quantum Phase"). (A copy and a certified English translation of the Tribunal's order bifurcating the proceedings are attached to the Hille Decl. as Ex. 4.)

15. The Liability Phase of the Arbitration continued for seven years until December 2008. During this phase, the Parties produced hundreds of thousands of documents, both to the Tribunal and between each other. CONPROCA and Respondents each submitted numerous

pleadings, briefs and reply briefs. The Parties also submitted dozens of witness statements and reply witness statements as well as expert reports and reply expert reports. The Tribunal conducted a site visit and held three hearings during the Liability Phase on January 30-February 6, 2006; May 4, 2006; and January 8-21, 2007. Numerous witnesses and experts were examined live at these hearings.

16. On December 17, 2008,[4] the Tribunal issued a detailed and comprehensive award on liability of more than 500 pages (the "Award on Liability"). (A copy and a certified English translation of the Award on Liability are attached to the Hille Decl. as Ex. 5.) The Tribunal ruled in favor of CONPROCA on a majority of its claims and rejected the majority of Respondents' counterclaims, *i.e.*, about 89%, and granted the rest (Id. at 508-511). The Tribunal also briefly described the issues to be determined in the Quantum Phase.[5]

17. On January 16, 2009, Respondents filed an application asking the Tribunal to interpret and correct its rulings on several claims in the Award on Liability and to correct errors of a typographical nature. (A copy and a certified English translation of Respondents' application are attached to the Hille Decl. as Ex. 7.) On March 16, 2009, the Tribunal issued an Addendum to the Award on Liability. (A copy and a certified English translation of the

---

[4] Pursuant to Article 24(2) of the ICC Rules of Arbitration, the ICC approved several extensions of the six-month time limit for issuing an award. (In accordance with 9 U.S.C. § 13(a), copies and certified English translations of letters from the Tribunal and the ICC confirming the extension of the deadline for issuing the Award on Liability are attached (with cover emails intentionally omitted) to the Hille Decl. as Ex. 6.)

[5] Ex. 5 at p. 511 (" During the quantum phase, the Arbitration Tribunal will decide on the other claims, including the amount of the claimed financial cost amount, the costs of this arbitration, and it will define the indemnification consequences for this award, upon hearing the parties in the timely manner that will be established.").

Addendum are attached to the Hille Decl. as Ex. 8.) The Tribunal rejected Respondents' requests for interpretation but corrected some typographical errors.

18. The final phase of the Arbitration, the Quantum Phase, commenced in March 2009 and lasted for nearly two years. As during the Liability Phase, CONPROCA and Respondents submitted multiple briefs and reply briefs, and each Party submitted several dozens of witness statements, multiple expert reports and hundreds of exhibits. The Tribunal held two hearings during the Quantum Phase on August 16-26, 2010 and on November 8-9, 2010.

19. On October 19, 2011, the Chair of the Tribunal declared the Arbitration proceedings closed and informed the Parties that, pursuant to the ICC Rules of Arbitration (the "ICC Rules"), a draft of the final award concerning issues decided in the Quantum Phase (the "Award on Quantum") had been submitted to the ICC International Arbitration Court for review and approval. (A copy and a certified English translation of the Tribunal's October 19, 2011 letter are attached to the Hille Decl. as Ex. 9.) The ICC International Arbitration Court's review of the Award on Quantum is ongoing and Petitioner CONPROCA anticipates that the Award on Quantum may be approved and issued to the Parties on or about December 31, 2011.[6]

20. Any arbitral award made in connection with the Arbitration, including the Award on Liability, falls under the Inter-American Convention on International Commercial Arbitration (the "Panama Convention") because such an award is an "arbitral award arising out of a legal relationship," which is considered "commercial" and not "entirely between citizens of the United

---

[6] As with the Award on Liability, pursuant to Article 24(2) of the ICC Rules, the ICC has approved several extensions of the six-month time limit for issuing an award. On November 2, 2011, the ICC extended the deadline for the release of the Award on Quantum until December 31, 2011. (In accordance with 9 U.S.C. § 13(a), copies and certified English translation of the letters from the Tribunal and the ICC confirming the extension of the deadline for issuing the Award on Quantum are attached to the Hille Decl. as Ex. 10.)

States." 9 U.S.C. § 202. Awards rendered in connection with this Arbitration could also fall under the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "New York Convention") for the same reasons. 9 U.S.C. § 302. Both the Panama and New York Conventions have been incorporated into Federal law under the Federal Arbitration Act (the "FAA"). 9 U.S.C. §§ 201, 301. Where an arbitral award falls under both the New York and Panama Conventions, the Panama Convention will apply where the "majority of parties to the arbitration agreement are citizens of a State or States that have ratified or acceded to the [Panama] Convention" and are members of the Organization of American States (the "OAS"). 9 U.S.C. § 305. The Panama Convention applies here because CONPROCA, PEMEX and PR are Mexican entities and Mexico is a member of the OAS.

21. Under 9 U.S.C. §§ 207, 302, a party is required to apply for an order confirming an arbitral award falling under the Panama Convention within three years after the award is made. Pursuant to Article 4 of the Panama Convention, "[a]n arbitral decision or award that is not appealable under the applicable law or procedural rules shall have the force of a final judicial judgment" and "[i]ts execution or recognition may be ordered ... in accordance with the procedural laws of the country where it is to be executed and the provisions of international treaties." Out of an abundance of caution, Petitioner CONPROCA brings this Petition to Confirm the Arbitration Award prior to the issuance of the Award on Quantum in this Arbitration to avoid possible forfeiture of its right to seek confirmation of the Award on Liability or the Award on Quantum in light of the three-year limitations period in 9 U.S.C. §§ 207, 302. This Petition to Confirm the Arbitration Award is timely brought within three years after the Award on Liability was made. Recognizing that judicial economy and procedural efficiency favor a single confirmation proceeding as to both the Award on Liability and the Award on

Quantum, Petitioner CONPROCA intends to amend and supplement this Petition to Confirm the Arbitration Award following the issuance of the final Award on Quantum.

22. None of the grounds for refusal of recognition or enforcement of an award as set out in Article V of the Panama Convention apply here.[7]

WHEREFORE, Petitioner CONPROCA respectfully requests that, pursuant to 9 U.S.C. §§ 207, 302, 304 and 305, an order be made: (a) confirming and recognizing the Award on Liability issued in the Arbitration; (b) directing entry of judgment in accordance therewith; and (c) awarding Petitioner such other and further relief as the Court deems just and proper.

Dated: New York, New York
       December 14, 2011

WHITE & CASE LLP

By: /s/ David Hille

David Hille (DH9865)
1155 Avenue of the Americas
New York, New York 10036
(212) 819-8200

Rafael Llano Oddone (RO8538)
Torre del Bosque – PH
Blvd. Manuel Avila Camacho #24
Col. Lomas de Chapultepec
11000 México, D.F.
México
+ 55255 5540 9600

Attorneys for Petitioner
CONPROCA S.A. de C.V.

---

[7] The grounds for refusal of recognition and enforcement of an arbitral award set out in Article V of the Panama Convention are identical in substance to those set out in Article V of the New York Convention.